HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

PHILLIP BARENGOLTS (*pro hac vice* to be filed)
pb@pattishall.com
JOSHUA A. R. ALDORT (*pro hac vice* to be filed)
jara@pattishall.com
BRETT A. MANCHEL (*pro hac vice* to be filed)
bam@pattishall.com
PATTISHALL, McAULIFFE, NEWBURY, HILLARD & GERALDSON LLP
125 S. Wacker Drive, Suite 2050
Chicago, Illinois 60606
Telephone: (312) 554-8000
Facsimile: (312) 554-8015

***Attorneys for Plaintiff***
PICOGRID, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

PICOGRID, INC., a Delaware corporation,

Plaintiff,

v.

YURTS TECHNOLOGIES, INC. d.b.a. LEGION INTELLIGENCE, INC., a Delaware corporation,

Defendant.

Case No. 2:26-cv-12998

**COMPLAINT FOR:**

1. **FEDERAL TRADEMARK INFRINGEMENT;**
2. **FEDERAL UNFAIR COMPETITION IN VIOLATION OF SECTION 43(a) OF THE LANHAM ACT;**
3. **CALIFORNIA STATUTORY UNFAIR COMPETITION CAL. BUS. & PROF. CODE § 17200 ET SEQ.;**
4. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT; and**
5. **CALIFORNIA COMMON LAW UNFAIR COMPETITION**

Plaintiff Picogrid, Inc. ("Picogrid"), alleges as follows:

## INTRODUCTION

This dispute arises from Defendant Yurts Technologies, Inc., d.b.a. Legion Intelligence, Inc.'s use of the trademark LEGION for a defense-related platform that helps to coordinate mission actions, which infringes Picogrid's federally registered LEGION trademark used and registered for overlapping products marketed to identical customers.

## PARTIES

1. Picogrid is a Delaware corporation with its principal place of business in El Segundo, California.

2. Yurts Technologies, Inc., d.b.a. Legion Intelligence, Inc. ("Legion Intelligence") is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction because this action arises under the Trademark Act of 1946, as amended, 15 United States Code ("U.S.C.") §§ 1051 *et seq*. (the "Lanham Act"), with jurisdiction specifically conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). Jurisdiction for the California state statutory and common law claims is conferred by 28 U.S.C. § 1338(b) and, under the principles of supplemental jurisdiction, by 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over Legion Intelligence because Legion Intelligence's principal place of business is in California, and it has engaged in, and continues to engage in, the acts complained of in this District.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Picogrid's claims occurred, and continue to occur, in this District. On information and belief, Legion Intelligence directed infringing activities at this judicial district by marketing and selling its LEGION products to, and/or partnering with, customers located in this District. Picogrid is

headquartered in this District, and the confusion and resulting harm alleged herein have occurred and continue to occur here.

## FACTS

6. Picogrid was founded in 2020 and is headquartered in El Segundo, California. It is a defense technology company that develops middleware, on-premises and cloud-based software, as well as ruggedized hardware to connect disparate sensors, drones, robots, cameras, and other command-and-control tools across land, sea, air, and space for defense, space, and public-safety customers.

7. One of Picogrid's flagship products is LEGION, a vendor-neutral, API-first platform that connects and commands mission assets, including: collecting and processing data generated by third-party systems in real time; directing and managing multiple sensors simultaneously; and integrating with operational tools used by the military to unify operations.

8. Picogrid has sold its LEGION platform to, among others, the U.S. Air Force and the U.S. Army, and has partnered with Northrop Grumman and Palantir, among others, to integrate LEGION into their projects with military applications.

9. Picogrid adopted the LEGION mark and has continuously used it in interstate commerce in connection with its platform long before Legion Intelligence's first use of LEGION.

10. Picogrid owns U.S. Trademark Registration No. 8,363,208 for LEGION in connection with "Downloadable middleware for software application integration; Downloadable computer software for application and database integration; Downloadable cloud-based software for software application, database, and hardware systems integration." The LEGION registration is valid, subsisting, and constitutes *prima facie* evidence of Picogrid's exclusive right to use the mark for the goods it covers, under 15 U.S.C. §§ 1057(b) and 1115(a).

11. Picogrid has spent substantial sums advertising, marketing, and promoting its LEGION platform.

12. Since long before Legion Intelligence's acts complained of herein, by virtue of Picogrid's aforesaid sales, advertising, and promotion, the LEGION mark has become well and favorably known in the defense and security fields and has come to represent extraordinarily valuable goodwill owned by Picogrid.

**LEGION INTELLIGENCE'S INFRINGING USE OF LEGION**

13. In April 2025, more than three years after Picogrid began using the LEGION mark, Yurts Technologies, Inc. rebranded as Legion Intelligence.

14. On information and belief, Legion Intelligence adopted its LEGION name and mark with knowledge of Picogrid's prior use of its LEGION mark, or without conducting a reasonable clearance search.

15. Legion Intelligence uses LEGION as the dominant, source-identifying element of its company name. Legion Intelligence de-emphasizes the word "intelligence" in its name. For example, the word "Intelligence" is displayed in a significantly smaller font size at the top of the Legion Intelligence website. Moreover, throughout its website, Legion Intelligence refers to itself simply as "Legion."

16. The word "intelligence," as part of Legion Intelligence's name, is descriptive of its products and, therefore, does not distinguish its LEGION name and mark from Picogrid's LEGION mark.

17. Legion Intelligence also uses LEGION as the dominant, source-identifying element of its product names, including "Legion Platform" and "Legion Packs."

18. The words "platform" and "packs," as part of Legion Intelligence's product names, are descriptive of its products and, therefore, do not distinguish its use of its LEGION mark from Picogrid's LEGION mark.

19. Given the manner of Legion Intelligence's use of the LEGION mark, it is indistinguishable from Picogrid's use of LEGION.

20. Legion Intelligence develops integration software and related products

for customers in the same defense, intelligence, and national-security ecosystem in which Picogrid operates.

21. Legion Intelligence's products are identical, related, or complementary to Picogrid's products for which Picogrid owns a federal registration. Both parties offer platforms that unify data and systems, integrate with existing mission systems, and enable operators to command workflows and assets. As Legion Intelligence describes its own products, "Legion meets your stack where it is. Modular and LLM-agnostic by design, it connects across your systems, runs in hybrid, on-prem, or air-gapped environments…".

22. Legion Intelligence claims its products "integrate with the systems you use every day," mirroring the language Picogrid uses to market its LEGION products that "integrate[] fragmented military and commercial hardware, sensors, drones, and software systems into a unified command and control (C2) network."

## LEGION INTELLIGENCE'S USE OF LEGION HAS ALREADY CAUSED ACTUAL CONFUSION

23. The parties sell to the same class of purchasers through overlapping marketing channels of trade, including the U.S. Air Force, the U.S. Army, defense contractors, integrators, and government marketplaces and resellers, and promote their products at some of the same industry events.

24. Both parties operate within the same military and security ecosystems. Purchasers and partners are therefore likely to assume that LEGION-branded platforms with overlapping functions and purposes come from a single source or are affiliated.

25. Indeed, Legion Intelligence's use of LEGION already has caused actual marketplace confusion.

26. For example, when selling to the military, Picogrid often must prove that its LEGION software can collaborate and integrate with other companies' products. During the selling process, government customers, as well as potential

collaborators, have mistaken Picogrid for Legion Intelligence or wrongly believed that the companies or their LEGION products were related.

27. Further, when such confusion causes potential partners to believe that Picogrid's LEGION software has functions that it does not actually have, or otherwise to associate Picogrid's LEGION software with Legion Intelligence and its LEGION products, Picogrid is likely to lose business opportunities without ever learning of the potential partner's confusion. Such confusion harms Picogrid both by taking the reputation of Picogrid's LEGION mark out of Picogrid's control and by causing Picogrid to lose out on sales opportunities.

28. Legion Intelligence's aforesaid use of the LEGION trademark is without Picogrid's authorization or consent.

## PICOGRID'S ATTEMPTS TO RESOLVE THIS DISPUTE AMICABLY WITH LEGION INTELLIGENCE

29. On July 6, 2026, in an attempt to resolve this dispute amicably without resorting to litigation, Picogrid sent Legion Intelligence a letter objecting to its use of the LEGION trademark.

30. Despite several follow-up efforts to explain the basis for Picogrid's claims, including the instances of actual confusion, Legion Intelligence has refused to cease using LEGION as a trademark in connection with its products.

31. Legion Intelligence's adoption and use of the LEGION mark for its products are a deliberate, intentional, and willful attempt to trade upon Picogrid's business reputation and the goodwill in its LEGION mark for its aforesaid products.

## FIRST CLAIM FOR RELIEF

**(Infringement of Federally Registered Trademark under 15 U.S.C. § 1114)**

32. Picogrid realleges paragraphs 1 through 31 as if fully set forth herein.

33. Legion Intelligence's aforesaid use of the LEGION mark is likely to cause confusion, mistake, or deception with Picogrid's use of the registered LEGION mark, or to create the mistaken belief that Legion Intelligence or its

products are connected with, sponsored by, or approved by Picogrid.

34. Legion Intelligence's use of the LEGION mark constitutes infringement of Picogrid's aforesaid registered LEGION mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Legion Intelligence's acts are greatly and irreparably damaging to Picogrid and will continue to damage Picogrid, unless and until Legion Intelligence is permanently enjoined by this Court, and Picogrid has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**

**(Federal Unfair Competition – False Designation of Origin under (15 U.S.C. § 1125(a))**

36. Picogrid realleges paragraphs 1 through 9 and 11 through 31 as if fully set forth herein.

37. Legion Intelligence's aforesaid use of the LEGION mark as a trademark in connection with Legion Intelligence's products is likely to cause confusion, mistake, or deception with Picogrid's use of the LEGION mark for Picogrid's products, or to create the mistaken belief that Legion Intelligence or its products are connected with, sponsored by, or approved by Picogrid.

38. Legion Intelligence's actions constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39. Legion Intelligence's acts are greatly and irreparably damaging to Picogrid and will continue to damage Picogrid, unless and until Legion Intelligence is permanently enjoined by this Court, and Picogrid has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**(Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq.)**

40. Picogrid realleges paragraphs 1 through 39 as if fully set forth herein.

41. Legion Intelligence's use of the LEGION mark as a trademark for its products is an unlawful, unfair, or fraudulent business act or practice likely to

deceive consumers by causing them to believe that Picogrid is the source of, or that Picogrid sponsors or approves of, Legion Intelligence's products.

42. Legion Intelligence's aforesaid conduct constitutes unfair competition in violation of the California Business and Professions Code § 17200 *et seq*.

43. As a direct and proximate result of the above-described unfair trade and advertising practices, Picogrid has suffered and is suffering significant harm, including irreparable injury. This harm will persist unless and until the Court enters a permanent injunction against the aforesaid acts of Legion Intelligence.

**FOURTH CLAIM FOR RELIEF**

**(Trademark Infringement – California Common Law)**

44. Picogrid realleges paragraphs 1 through 9 and 11 through 31 as if fully set forth herein.

45. Legion Intelligence's aforesaid conduct constitutes trademark infringement under the common law of the State of California. Picogrid owns protectable common-law rights in the distinctive LEGION mark through its prior and continuous use, including in California, and Legion Intelligence's use of LEGION is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Legion Intelligence's products.

46. As a direct and proximate result of this infringement, Picogrid has suffered and is suffering significant harm, including irreparable injury. This harm will persist unless and until the Court enters a permanent injunction against the aforesaid acts of Legion Intelligence.

**FIFTH CLAIM FOR RELIEF**

**(Unfair Competition – California Common Law)**

47. Picogrid realleges paragraphs 1 through 9 and 11 through 31 as if fully set forth herein.

48. Legion Intelligence's aforesaid conduct constitutes unfair competition under the common law of the State of California.

49. As a direct and proximate result of this unfair competition, Picogrid has suffered and is suffering significant harm, including irreparable injury. This harm will persist unless and until the Court enters a permanent injunction against the aforesaid acts of Legion Intelligence.

## PRAYER FOR RELIEF

WHEREFORE, Picogrid prays for judgment against Legion Intelligence, and in favor of Picogrid, as follows:

1. Legion Intelligence, its officers, agents, servants, employees, representatives, attorneys, its successors and assigns, and all other persons, firms, or corporations in active concert or participation with Legion Intelligence who receive notice hereof, including, but not limited to, all subsidiaries, affiliates, and licensees of Legion Intelligence, be permanently enjoined from:

a. using LEGION or any mark, logo, trade name, trade dress, domain name, or social media account name, handle, or hashtag that incorporates "LEGION" in connection with the defense or security fields, is similar to Picogrid's LEGION mark for use in the defense or security fields, or is otherwise likely to cause confusion with Picogrid's LEGION mark;

b. using any other mark, logo, trade name, trade dress, domain name, social media account name, handle, or hashtag that, in whole or in part, comprises Picogrid's LEGION mark, or any other colorable imitation of it, in a manner that is likely to confuse, mislead, or deceive others into believing that Legion Intelligence or its products emanate from, or are connected with, sponsored by, or approved by Picogrid;

c. applying to register or obtaining any registration for any mark, logo, trade name, trade dress, domain name, social media account name, handle, or hashtag that incorporates "LEGION" for use in the defense or security fields, or is similar to Picogrid's LEGION mark for use in the defense or security fields;

d. doing any other act or thing likely to confuse, mislead, or deceive others into believing that Legion Intelligence or its products emanate from, are connected with, sponsored by, or approved by Picogrid; and

e. assisting, aiding, or abetting any other person or entity in engaging in any of the activities prohibited in the aforesaid paragraphs (a) through (d).

2. Legion Intelligence, and all others acting by, through, or under it, be required, jointly and severally, to:

a. account for and pay to Picogrid all profits derived by Legion Intelligence from its acts of trademark infringement, false designation of origin, and unfair competition, such award to be enhanced in accordance with 15 U.S.C. § 1117(a);

b. pay to Picogrid the amount of all damages incurred by Picogrid by reason of Legion Intelligence's acts of trademark infringement, false designation of origin, and unfair competition, in accordance with 15 U.S.C. § 1117(a), with such amount for the Lanham Act claims to be trebled in accordance with 15 U.S.C. § 1117(a);

c. pay to Picogrid the amount of all damages incurred by Picogrid by reason of Legion Intelligence's acts of trademark infringement and unfair competition, in accordance with California common law;

d. pay to Picogrid punitive damages in accordance with California Civil Code § 3294;

e. pay to Picogrid pre- and post-judgment interest in accordance with federal and California law; and

f. pay to Picogrid the costs of this action, together with reasonable attorneys' fees and disbursements, in accordance with 15 U.S.C. § 1117(a).

3. Picogrid be granted such other and further relief as the Court deems just and equitable.

DATED: November 5, 2026

HANSON BRIDGETT LLP

By: */s/ Raffi V. Zerounian*
RAFFI V. ZEROUNIAN
JUSTIN P. THIELE

PATTISHALL, McAULIFFE, NEWBURY, HILLARD & GERALDSON LLP

PHILLIP BARENGOLTS
(*pro hac vice* to be filed)
JOSHUA A. R. ALDORT
(*pro hac vice* to be filed)
BRETT A. MANCHEL
(*pro hac vice* to be filed)

***Attorneys for Plaintiff***
PICOGRID, INC.